# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE CRISTOBAL CARDONA,    :     Civil No. 3:14-cv-951

         Petitioner    :     (Judge Mariani)

         v.    :

D. ZICKEFOOSE,    :

         Respondent    :

**FILED
SCRANTON**

MAY - 6 2016

PER _____
DEPUTY CLERK

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Jose Cristobal Cardona, an inmate currently confined at the United States Penitentiary, Big Sandy, in Inez, Kentucky. (Doc. 1). Named as the sole Respondent is Warden D. Zickefoose. In the petition, Cardona challenges several prison disciplinary hearings. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.  Background

On February 21, 2003, Cardona was sentenced in the United States District Court for the Western District of Texas to a 480-month term of imprisonment for conspiracy of possession with intent to deliver marijuana/heroin, and possession of marijuana/heroin with intent to deliver. (Doc. 7-1, Declaration of Dominick DeSanto, BOP Paralegal Specialist ("DeSanto Decl."), ¶ 3). His projected release date is February 22, 2037, via good conduct time. (*Id.*).

Cardona claims that his rights were violated during the course of seven separate prison disciplinary hearings held at various facilities operated by the Bureau of Prisons ("BOP"). (Doc. 1). He claims that he "is being constitutionally forced to participate in fraudulent (SMU) program and being subjected to a conspiratorially planned fraudulent and extortionate disciplinary action scam" [sic]. (*Id.* at 2).

The seven incident reports that Cardona challenges in the instant petition are Numbers 2422833, 2412438, 2180781, 2132921, 1991132, 2552754, and 2187358. (*Id.* at 3-4). Five of the seven incident reports challenged in this action have been raised by Cardona in prior habeas corpus actions. Two of those habeas petitions are currently pending before the Court; namely, Civil No. 3:14-cv-00453, challenging Incident Report Number 2422833; and, Civil No. 3:14-cv-00624, challenging Incident Report Number 2412438. Three of the habeas petitions have been reviewed by the Court, and closed by Court Orders; namely, Civil No. 3:12-cv-753, challenging Incident Report Number 2180781; Civil No. 3:12-cv-820, challenging Incident Report Number 2132921; and, Civil No. 4:10-cv-2269, challenging Incident Report Number 1991132. Accordingly, the Court will not address the five incident reports that have been raised in prior habeas petitions. The instant Memorandum will only address Incident Report Numbers 2552754 and 2187358.

## II.   Discussion

### A.   Exhaustion

Respondent argues that the petition should be denied based on Cardona's failure to comply with the BOP's administrative review process. (Doc. 7, pp. 14-15). Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury"); *Carling v. Peters*, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP's administrative review remedy program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 7-1, DeSanto Decl. ¶ 5, citing 28 C.F.R. § 542.10, et seq.). With respect to disciplinary hearing decision appeals, a BOP inmate can initiate the first step of the administrative review process by filing a direct written appeal to the BOP's Regional Director (thus bypassing the institutional level of review) within twenty days after receiving the Discipline Hearing Officer's ("DHO") written report. (Id. at ¶ 7, citing 28 C.F.R. § 542.14(d)(2)). If dissatisfied with the Regional Director's response, a Central Office Appeal may then be filed with the BOP's Office of General Counsel. (Id. at ¶¶ 7, 8, citing 28 C.F.R. § 542.15(a)). This is the inmate's final available administrative appeal. (Id.).

1.    *Incident Report Number 2552754*

On February 25, 2014, while incarcerated at the United States Penitentiary, Allenwood, in White Deer, Pennsylvania, ("USP Allenwood"), Cardona was charged in Incident Report Number 2552754 with a code 326 violation for "possession of gambling paraphernalia", a code 329 violation for "destroying government property valued less than $100", and a code 330 violation for "being unsanitary or untidy." (Doc. 7-1, DeSanto Decl. ¶ 46). A disciplinary hearing was held and the disciplinary hearing officer ultimately found that Cardona committed the prohibited acts of "destroying, altering, or damaging government

4

property having a value of $100.00 or less", and "possession of gambling paraphernalia." (Doc. 7-1, Attach. 7). As such, the DHO sanctioned Cardona with twenty-six (26) days disallowance of good conduct time, and six (6) months loss of commissary privileges. (*Id.*).

On April 7, 2014, Cardona filed Administrative Remedy Number 774635-R1 with the Northeast Regional Office. (DeSanto Decl. ¶ 14; Doc. 7-1, Attach. 1, Administrative Remedy Generalized Retrieval). On April 8, 2014, Administrative Remedy Number 774635-R1 was rejected because it was in improper form. (*Id.*).

On April 28, 2014, Cardona re-filed Administrative Remedy Number 774635-R2 with the Northeast Regional Office. (DeSanto Decl. ¶ 15; Doc. 7-1, Attach. 1, Administrative Remedy Generalized Retrieval). On May 2, 2014, the remedy was rejected because Cardona failed to provide staff verification for submitting an untimely appeal.[1] (*Id.*).

On May 27, 2014, Cardona re-filed Administrative Remedy Number 774635-R3 with the Northeast Regional Office. (DeSanto Decl. ¶ 16; Doc. 7-1, Attach. 1, Administrative Remedy Generalized Retrieval). On May 28, 2014, the remedy was rejected because Cardona failed to provide staff verification for submitting an untimely appeal. (*Id.*).

Respondent maintains that there is no record of any other administrative remedy

---

[1]    Although not presently in the record before the Court, the Court is aware of a memorandum that purports to be staff verification for the improper and untimely filing of Administrative Remedy Number 774635-R2. *See Cardona v. Zickefoose*, Civil No. 3:14-cv-1129 (Doc. 1, p. 16; Doc. 8, p. 6). The Court reiterates that this staff verification is not part of the record in the instant case. However, the Court would be remiss were it to find that Cardona failed to exhaust his administrative remedies related to Incident Report Number 2552754 in light of the staff verification implying that the improper filing and delay may be attributable to factors beyond the inmate's control.

filings by Cardona regarding the present issues. (Doc. 7, at 3; Doc. 7-1, DeSanto Decl. ¶ 17). However, out an abundance of caution, and in the event that the instant record is incomplete, the Court will not deny the petition concerning Incident Report Number 2552754 based on failure to exhaust. The merits of Incident Report Number 2552754 will be discussed herein.

2.   *Incident Report Number 2187358*

On July 19, 2011, while confined at the United States Penitentiary, Lewisburg, Pennsylvania, Cardona was charged in Incident Report Number 2187358 with a code 201 violation for "fighting", and a code 307 violation for "refusing an order." (Doc. 7-1, DeSanto Decl. ¶¶ 18, 19). A disciplinary hearing was held and the disciplinary hearing officer found that Cardona committed the prohibited act of "fighting," a code 201 violation. As such, the DHO sanctioned Cardona with twenty-seven (27) days disallowance of good conduct time, thirty (30) days disciplinary segregation, and ninety (90) days loss of visiting and commissary privileges. (*Id.*).

Respondent asserts that the record reveals that Cardona has not filed any administrative remedies concerning Incident Report Number 2187358. (Doc. 7-1, DeSanto Decl. ¶ 12; Doc. 7-1, Attach. 1, Administrative Remedy Retrieval). However, in his traverse, Cardona argues that he has exhausted the available administrative remedies regarding his claims of "placement and forced participation in SMU program", and his claim that staff are

racist and extorting good time credits from prisoners. (Doc. 10, p. 2). In support of this argument, Cardona submitted a response from the Central Office regarding an appeal to the Central Office. (Doc. 10-1). Accordingly, the Court will err on the side of caution, and will not deny the petition concerning Incident Report Number 2187358 based on failure to exhaust. Thus, the merits of Incident Report Number 2187358 will be addressed.

B.     Merits

Respondent argues that the petition should be denied on the merits because "some evidence" supports the findings of the Disciplinary Hearing Officers regarding Incident Report Numbers 2552754 and 2187358. (Doc. 7, pp. 16-18).

1.     Incident Report 2552754

As stated, on February 25, 2014, Cardona was served with Incident Report Number 2552754 charging him with a code 326 violation for "possession of gambling paraphernalia," a code 329 violation for "destroying government property valued less than $100," and a code 330 violation for "being unsanitary or untidy." (Doc. 7-1, DeSanto Decl. ¶ 47; Doc. 7-1, Attach. 7). The incident report describes the incident as follows:

> This officer conducted a search of Cell 216 along with Officer Heater, we found multiple clothes such as; torn sheets used for clotheslines, 2 laundry bags tied together with torn sheets, for "fishing" lines made from laundry bags and a section of tile that was removed and laying against the wall where there was a fire burning previously on the floor and against the wall. The wall has black creosote from burning elastic from multiple institutional boxers. The burn container was located on the right side of the cell door, this was an aluminum fish packet turned inside out with torn T-shirt tied on to it and it was

covered with the same soot that was on the wall and floor. The cell smelled of smoke on the wall and ceiling. A large amount of elastic from boxers was found under Inmate Cardona's mattress. With this damage just institutional property the damage is over $100.00. This was calculated using UNICOR prices estimates at $113.00 in clothing damage and property damage. Also tile repair and repainting will need to be completed to return the cell to original condition as documented on DB SMU CELL INSPECTION SHEET located on the door of cell 216.

This Officer also found in Inmate CARDONA's # 40689-080 locker area an envelope full of betting slips, 2 for each cell in Unit 4B and a paper titled "Oil Money Sports," "Commissary Odds" "Lock and Drop Specials" and "Teasers" stating that there is different pay outs for each. Also separate betting slips where [sic] found in Inmate CARDONA's # 40869-080 bunk area with his glasses tied to the bed post with a piece of ripped T-shirt.

(Doc. 7-1, Attach. 7).

On February 25, 2014, Lieutenant B. Stahl gave Cardona advanced written notice of

the charges against him. (Doc. 7-1, DeSanto Decl. ¶ 48).

During the investigation, Cardona was advised of his right to remain silent, he

indicated that he understood his rights, and stated "you are setting my [sic] up." (*Id.*).

On February 26, 2014, Cardona appeared before the Unit Discipline Committee

("UDC"). (Doc. 7-1, DeSanto Decl. ¶ 50). He was again advised of his rights, he indicated

that he understood his rights, and stated "[p]reseve the video. I'm not guilty." (Doc. 7-1,

Attach. 7). The UDC referred the charge to the DHO, with a recommendation that sanctions

be imposed. (Doc. 7-1, Attach. 7). During the UDC hearing, a staff member informed

Cardona of his rights at the DHO hearing and provided him with a copy of the "Inmate

Rights at Discipline Hearing" form. (Doc. 7-1, DeSanto Decl. ¶ 52; Doc. 7-1, Attach. 8,

Inmate Rights at Discipline Hearing).  Cardona refused to sign for his copy of the "Inmate

Rights at Discipline Hearing" form. (Doc. 7-1, DeSanto Decl. ¶ 53; Doc. 7-1, Attach. 8,

Inmate Rights at Discipline Hearing).  Correctional Counselor Antonacci signed this form as

a witness.  (Id.).

Cardona was provided with a "Notice of Discipline Hearing before the Discipline

Hearing Officer (DHO)" form. (Doc. 7-1, DeSanto Decl. ¶ 54; Doc. 7-1, Attach. 9, Notice of

Discipline Hearing before the Discipline Hearing Officer (DHO)).  Cardona requested to

have a staff member represent him and requested to call Fernando Cuellar as a witness.

(Id.).

A "Duties of Staff Representative" memorandum was prepared by USP Allenwood

Warden Zickefoose for the Drug Abuse Program Coordinator, M. Maysonet, describing her

responsibilities as a staff representative for Cardona. (Doc. 7-1, DeSanto Decl. ¶ 54; Doc.

7-1, Attach. 10, Duties of Staff Representative Memorandum).

On March 17, 2014, Cardona appeared for a hearing before DHO Todd W. Cerney.

(Doc. 7-1, Attach. 11, DHO Report).  During the March 17, 2014 DHO hearing, the DHO

confirmed that Cardona received advanced written notice of the charges on February 25,

2014, that he had been advised of his rights before the DHO on February 26, 2014, and that

Cardona requested a staff representative.  (Id.).  The DHO again advised Cardona of his

rights, he indicated that he understood them, and that he was ready to proceed with the

hearing. (*Id.*). Cardona made the following statement regarding the charges:

> I had a cell mate on February 25[th]. His name was Sanchez. I'm not sure
> what all clothes he's talking about. Those slips are not mine. I did not write
> them. They were in my possession, but they were not mine. I think it's a first
> amendment right to be able to make things like this. I'm not responsible for
> tearing up no $100 dollars of clothes. I did not tear up no jumpsuits.

(*Id.*). Cardona further stated that he did not believe that Sanchez received an incident

report in the case. (*Id.*). The DHO then asked Cardona if this cellmate was responsible for

the damage to the clothing items in the incident report, and Cardona stated that "he did not

want to involve Sanchez and he would have to 'take this.'" (*Id.*).

In addressing Cardona's witness request, the DHO found the following:

> CARDONA requested Cuellar # 18686-179 to present testimony in this case.
> CARDONA informed the DHO that Cuellar would be able to testify as to the
> burnt marks within the cell from when Cuellar and CARDONA had been
> cellmates.

> The DHO's Sentry review showed Cuellar had resided in Unit IV B, cell 216.
> He was moved to a subsequent cell on September 9, 2013. Given the fact it
> had been in excess of 5 months since Cuellar's removal from the cell and the
> date of this incident, the DHO did not believe testimony regarding the cell
> condition from as late as September 9, 2013, to be particularly relevant.
> Further, the alleged burnt contraband (clothing items and food containers)
> were not believed by the DHO to have likely been within the cell from the
> timeframe which Cuellar resided.

(*Id.*).

In addition to the incident report and investigation, the documentary evidence which

the DHO considered in making his determination included: (1) Memorandum from C.

Heater, dated February 25, 2014; (2) Memorandum C. Winter, dated February 28, 2014; (3)

USP DB SMU Cell Inspection Sheet for cell 216; and, (4) evidence photographs taken on

February 26, 2014. (*Id.*).

After consideration of the evidence, the DHO found that the greater weight of the

evidence supported a finding that Cardona committed the prohibited acts of "destroying,

altering, or damaging government property having a value of $100.00 or less", and

"possession of gambling paraphernalia." (*Id.*). As such, the DHO sanctioned Cardona with

twenty-six (26) days disallowance of good conduct time and six (6) months loss of

commissary privileges. (*Id.*). The DHO documented his reasons for the sanctions given as

follows:

> CARDONA's destruction of Government property infringes upon the budget of
> the Bureau of Prisons and the taxes of the American public. Items destroyed
> by inmates must be replaced for subsequent use. Allowing CARDONA to
> destroy items without retribution would not make him responsible for his
> actions. Accordingly, disallowed good conduct time is sanctioned to punish
> him for his behavior and deter him from it in the future.
>
> CARDONA's possession of gambling paraphernalia is a violation of Bureau of
> Prison rules and regulations and threatened the orderly running of this
> institution. This behavior is not allowed, as gambling-type behavior typically
> creates some sort of dent. Debt in a prison setting often fosters violence in
> relation to payment/non-payment. Accordingly, disallowed good conduct time
> is sanctioned in an effort to punish CARDONA for his behavior and loss of
> commissary privileges to deter him from this in the future.

(*Id.*).

Cardona was advised of his appeal rights at the conclusion of the hearing.  (*Id.*).

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  *Id.*  As Cardona's sanctions did include the loss of good conduct time, he has identified a liberty interest in this matter.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that

could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); see *also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for

a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Cardona was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Cardona also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Cardona was then notified of his right to appeal.

Since Cardona was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon the following: (1) Memorandum from C. Heater, dated February 25, 2014; (2) Memorandum C. Winter, dated February 28, 2014; (3) USP

14

DB SMU Cell Inspection Sheet for cell 216; and, (4) evidence photographs taken on

February 26, 2014. (Doc. 7-1, Attach. 11).  Based on the foregoing, the Court concludes

that the evidence before the DHO was sufficient to support the outcome of the hearing and

meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits

of 28 C.F.R. § 541, *et seq.*  Cardona was found guilty of two 300-level, moderate category

prohibited acts.  Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for

300-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 3 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

28 C.F.R. § 541.3 (Table 1).  Thus, the sanctions imposed by the DHO were consistent with

the severity level of the prohibited acts and within the maximum available to the DHO.

Accordingly, the petition will be denied as to Incident Report 2552754.

2.   *Incident Report 2187358*

On July 19, 2011, Cardona was served with Incident Report Number 2187358

charging him with a code 201 violation for "fighting", and a code 307 violation for "refusing

an order." (Doc. 7-1, DeSanto Decl. ¶¶ 18, 19).  The incident report describes the incident

as follows:

> On above date and time, while doing rounds at the West Rec Pens, this
> officer observed Inmates Pena # 65785-079 and Cardona # 40869-080
> fighting in Rec Pen #16.  This officer called for assistance and gave orders for
> all inmates in the pen to lie on the ground.  When assisting staff arrived
> chemical munitions were used to get all inmates to comply to the orders to lie
> on the ground.  All inmates were removed from the pen and escorted to the
> west side holding pens without further incident.

(Doc. 7-1, Attach. 2).

On July 19, 2011, Lieutenant D. Dawkus gave Cardona advanced written notice of

the charges against him.  (Doc. 7-1, DeSanto Decl. ¶ 21; Doc. 7-1, Attach. 2).

During the investigation, Cardona was advised of his right to remain silent, he

indicated that he understood his rights, and made no statement.  (Doc. 7-1, DeSanto Decl.

¶ 22).

On July 29, 2011, Cardona appeared before the UDC.  (Doc. 7-1, DeSanto Decl. ¶

23).  He was again advised of his rights, he indicated that he understood his rights, and

stated that he had no comment. (*Id.*). The UDC referred the charge to the DHO, with a

recommendation that sanctions be imposed. (Doc. 7-1, DeSanto Decl. ¶ 24). During the

UDC hearing, a staff member informed Cardona of his rights at the DHO hearing and

provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1,

DeSanto Decl. ¶ 25; Doc. 7-1, Attach. 3, Inmate Rights at Discipline Hearing). Cardona

refused to sign for his copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1,

DeSanto Decl. ¶ 26; Doc. 7-1, Attach. 3, Inmate Rights at Discipline Hearing). Correctional

Counselor P. Lizardi signed this form as a witness. (*Id.*).

Cardona was provided with a "Notice of Discipline Hearing before the Discipline

Hearing Officer (DHO)" form. (Doc. 7-1, DeSanto Decl. ¶ 27; Doc. 7-1, Attach. 4, Notice of

Discipline Hearing before the Discipline Hearing Officer (DHO)). Cardona waived his rights

to have a staff member represent him and did not request to call any witnesses. (*Id.*).

Cardona refused to sign the form, and a staff member signed the form as a witness. (*Id.*).

On July 25, 2011, Cardona appeared for a hearing before DHO Chambers. (Doc. 7-

1, Attach. 5, DHO Report). During the July 25, 2011 DHO hearing, the DHO confirmed that

Cardona received advanced written notice of the incident report on July 19, 2011, that he

had been advised of his rights before the DHO on July 20, 2011, and that Cardona waived

the services of a staff representative. (*Id.*). The DHO again advised Cardona of his rights,

Cardona indicated that he understood them, and that he was ready to proceed with the

hearing. (*Id.*). Cardona was provided an opportunity to make a statement, to which he stated "no comment." (*Id.*). Cardona also acknowledged that the incident was recorded on videotape. The summary of the inmate statement is as follows:

> Inmate Cardona acknowledged he understood his rights before the DHO and was ready to proceed with the hearing. Inmate Cardona presented no documents for the DHO to consider. Inmate Cardona testified that he had "no comment" to make regarding Section 11 of the incident report in this case. Inmate Cardona acknowledged that the incident was recorded on videotape. The DHO asked inmate Cardona whether he wished to admit or deny committing the prohibited acts charged in Sections 9, 10 and 11 of the incident report. Inmate Cardona again stated that he had "no comment" to make regarding Sections 9, 10, and 11 of the incident report. Inmate Cardona made no complaints of procedural errors during the hearing.

(Doc. 7-1, Attach. 5).

In addition to the incident report and investigation, the documentary evidence which the DHO considered in making his determination included: (1) Memorandum from Seeba, dated July 19, 2011; (2) BOP Health Services Clinical Encounter Forms, dated July 19, 2011, prepared with regard to inmates Cardona and Pena-Llanas; (3) photographs of inmates Cardona and Pena-Llanas, taken following the incident, and (4) video footage. (*Id.*).

After consideration of the evidence, the DHO found that the evidence supported a finding that Cardona committed the prohibited act of "fighting", a code 201 violation. (*Id.*). The DHO noted that Cardona "declined to comment at the DHO hearing, declined to make any statement of any sort, and did not provide the DHO with any documentary evidence to

18

review." (*Id.*). Further, the DHO determined that "if inmate Cardona believed he did not commit the prohibited acts as charged, he would have specifically denied committing the prohibited acts charged, [and] presented some sort of defense to the charges." (*Id.*). The DHO sanctioned Cardona with twenty-seven (27) days disallowance of good conduct time, thirty (30) days disciplinary segregation, and ninety (90) days loss of visiting and commissary privileges. (*Id.*). The DHO documented his reasons for the sanctions given as follows:

> Fighting in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Cardona's period of incarceration. Loss of commissary and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

(*Id.*).

Cardona was advised of his appeal rights at the conclusion of the hearing. (*Id.*).

As Cardona's sanctions included the loss of good conduct time, he has identified a liberty interest in this matter. Furthermore, it is clear that Cardona was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and

19

to present witnesses on his behalf. Cardona also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Cardona was alos notified of his right to appeal.

Because Cardona was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the DHO's decision. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the evidence supported a finding of guilt. Specifically, the DHO relied upon the following: (1) Memorandum from Seeba, dated July 19, 2011; (2) BOP Health Services Clinical Encounter Forms, dated July 19, 2011, prepared with regard to inmates Cardona and Pena-Llanas; (3) photographs of inmates Cardona and Pena-Llanas, taken following the incident, and (4) video footage. (Doc. 7-1, Attach. 5). Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Lastly, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Cardona was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

A.   Recommend parole date rescission or retardation.
B.   Forfeit and/or withhold earned statutory good time or non-vested good

conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1   Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.   Disciplinary segregation (up to 6 months).

D.   Make monetary restitution.

E.   Monetary fine.

F.   Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G.   Change housing (quarters).

H.   Remove from program and/or group activity.

I.   Loss of job.

J.   Impound inmate's personal property.

K.   Confiscate contraband.

L.   Restrict to quarters.

M.   Extra duty.

28 C.F.R. § 541.3 (Table 1).  Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO.  Accordingly, the petition will be denied as to Incident Report 2187358.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied.  An appropriate order will issue.

Date:  May___, 2016

Robert D. Mariani
United States District Judge

21